<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FEYZULLAH KAYNAROGLU and CIARA RODRIGUEZ, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> AVIS BUDGET GROUP, INC., <br><br> Defendant. | Case No. 2:24-cv-06828 (BRM) (AME) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are three motions. Defendant Avis Budget Group, Inc. ("Avis") brings a Partial Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion to Dismiss"). (ECF No. 20.) Plaintiffs Feyzullah Kaynaroglu ("Kaynaroglu") and Ciara Rodriguez ("Rodriguez") (collectively, "Plaintiffs") oppose the Motion to Dismiss, attaching the Declaration of Justin M. Swartz (the "Swartz Declaration") to their submission. (ECF Nos. 34, 34-1.) Avis also moves to strike the Swartz Declaration (the "Motion to Strike"). (ECF No. 36.) Separately, Plaintiffs bring a Motion for Court-Authorized Notice of this action, pursuant to 29 U.S.C. § 216(b) (the "Notice Motion"). (ECF No. 22.) Having reviewed and considered the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Fed. R. Civ. P. 78(b), for the reasons set forth below and for good cause having been shown, Avis's Motion to Dismiss is **DENIED**, Avis's Motion to Strike is **DENIED AS MOOT**, and Plaintiffs' Notice Motion is **GRANTED IN PART AND DENIED IN PART**.

I.    **BACKGROUND**

A.  **Factual Background**

For the purpose of the Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Plaintiff Kaynaroglu is a former Avis employee who resides in Fort Worth, Florida. (Compl. (ECF No. 1) ¶ 10.) Plaintiff Rodriguez is a former Avis employee who resides in Brooklyn, New York. (*Id.* ¶ 13.) Avis is a "nationwide automobile rental company" with its corporate headquarters in Parsippany, New Jersey. (*Id.* ¶¶ 19–20.)

Plaintiffs' Complaint seeks "to recover overtime compensation and other damages for Plaintiffs and similarly situated employees who have worked as salary-paid and exempt-classified Operations Managers, assistant-level managers, and similarly titled individuals" (referred to as "OMs") for Avis throughout the United States from June 7, 2021, "through the date of final judgment," which Plaintiffs call the "Relevant Period."[1] (*Id.* ¶ 1.) Generally, Plaintiffs allege "Avis has engaged in a scheme and unlawful pay practice applicable to all of its OMs employed across the United States and its territories during the . . . statutory perio[d] by willfully misclassifying OMs as exempt from overtime pay" under the Fair Labor Standards Act of 1938, as amended, 29

---

[1] Plaintiffs allege in a footnote that they, along with several other individuals, entered into a tolling agreement with Avis on October 11, 2023, that extended the relevant period of the alleged violations as described in the Complaint. (ECF No. 1 ¶ 1 n.1.) As described *infra*, the status and impact of this tolling agreement is the subject of dispute between the parties.

U.S.C. § 201 *et seq.* ("FLSA"). (*Id.* ¶ 4.) Plaintiffs seek to represent a nationwide collective of OMs they allege were misclassified under the FLSA (the "FLSA Collective").[2] (*Id.* ¶ 33.)

Plaintiff Kaynaroglu alleges he was employed by Avis "from approximately September 2018 to June 2021 as an OM at one of [Avis's] Newark, New Jersey locations." (*Id.* ¶ 11.) The Complaint cites the week of April 12, 2021, as one instance in which, "[u]pon information and belief, Plaintiff Kaynaroglu worked about 50 hours . . . and was not paid any wages or overtime wages for hours worked in excess of 40 during that week." (*Id.* ¶ 12.) Plaintiff Rodriguez alleges she was employed as an OM at one of Avis's New York City locations from "approximately August 2018 to August 2021" and similarly cites the week of June 14, 2021, as one where, "[u]pon information and belief," Plaintiff Rodriguez worked "about 50 hours" without compensation for the hours over 40 worked. (*Id.* ¶¶ 13–14.) Beyond the specific instances cited, both Plaintiffs allege they "routinely worked about 50 hours per workweek" for Avis without compensation for the overtime hours. (*Id.* ¶ 16.)

Plaintiffs allege Avis employed "Plaintiffs and similarly situated employees within the meaning of the FLSA" during the Relevant Period and exercised "substantial control over Plaintiffs' working conditions." (*Id.* ¶ 21.) This control included "timekeeping, payroll and other employment practices that applied to [Plaintiffs and similarly situated employees.]" (*Id.* ¶ 23.) Plaintiffs also allege Avis had uniform "employment policies, practices, and procedures" relevant

---

[2] Plaintiffs Kaynaroglu and Rodriguez also seek to represent classes of OMs who worked in New Jersey and New York, respectively, and who they allege are entitled to "unpaid overtime wages and other damages" under the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, *et seq.* ("NJWHL"), and the New York Labor Law, Art. 6 §§ 190 *et seq.,* and Art. 19, §§ 650 *et seq.* ("NYLL"). (*Id.* ¶¶ 2–3.) Avis's Motion to Dismiss does not challenge the NJWHL or NYLL claims. (ECF No. 20-1 at 1.)

to OMs during the Relevant Period, "including classifying all OMs across the United States and

its territories as exempt[.]" (*Id.* ¶ 24.)

The Complaint alleges Avis "intentionally, willfully, and repeatedly engaged in a pattern,

practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective[,]"

including:

> a. willfully failing to pay Plaintiffs and the members of the FLSA
>    Collective overtime wages for hours that they worked in excess of 40
>    hours per workweek;
> b. willfully misclassifying Plaintiffs and the members of the FLSA
>    Collective as exempt from the protections of the FLSA; and
> c. willfully failing to record all the time that its employees, including
>    Plaintiffs and the FLSA Collective, have worked for the benefit of
>    Defendant.

(*Id.* ¶¶ 35.) Plaintiffs claim Avis "is aware or should have been aware" of FLSA and state law

requirements to pay "employees performing non-exempt duties," such as Plaintiffs and the FLSA

Collective, "an overtime premium for hours worked in excess of 40 per workweek." (*Id.* ¶ 36.)

The Complaint also alleges prior litigation "placed [Avis] on notice . . . that it was misclassifying

assistant-level managers (which are equivalent to the OM position) as exempt," but, after settling

those claims, Avis "continued to misclassify OMs as exempt." (*Id.* ¶¶ 36–37.)

The Complaint makes several allegations regarding the duties of OMs during the Relevant

Period. (*Id.* ¶¶ 39–47.) The Complaint alleges OMs' job duties are standardized across Avis

locations and include "general customer service and vehicle preparation for rental." (*Id.* ¶¶ 43–

44.) OMs allegedly spend the "vast majority of their time performing these non-exempt duties"

(*id.* ¶ 44) and do not "direct the work of 2 or more full-time employees" (*id.* ¶ 42). Plaintiffs and

the FLSA Collective were allegedly paid "a weekly salary for 40 hours for their services." (*Id.*

¶ 45.) The Complaint also alleges "Plaintiffs and the FLSA Collective were closely supervised by

their direct and indirect supervisors" (*id.* ¶ 46) and "did not exercise a meaningful degree of

independent discretion" in following Avis's "policies, practices, and procedures" (*id.* ¶ 47.) Plaintiffs allege Avis failed to make either "a good faith inquiry" into Plaintiffs and the FLSA Collective's classification as exempt from overtime pay or "an individualized evaluation" of whether Plaintiffs and OMs "were correctly classified as exempt[.]" (*Id.* ¶¶ 46–47.)

On behalf of themselves and the FLSA Collective, Plaintiffs allege these practices constitute a violation of Section 207A of the FLSA. (*Id.* ¶¶ 72–84.) Plaintiffs contend this violation was "willful" as Avis "knew or should have known from prior litigation that the OM position as a total group or class of workers does not satisfy the elements of any exemption under the FLSA." (*Id.* ¶ 81.) Plaintiffs ask this Court to permit them to notify all members of the FLSA Collective of this litigation; to award unpaid overtime pay and liquidated damages as provided for in the FLSA and supporting regulations, including any applicable interest; to provide injunctive relief; to issue a declaratory judgment that Avis's described practices are unlawful; and to provide an incentive award to Plaintiffs. (*Id.* at Prayer for Relief.)

### B. Procedural History

Plaintiffs filed the collective and class action Complaint at issue here on June 7, 2024. (ECF No. 1.) Attached to the Complaint were "Consent to Join" forms signed by Alesha Taylor, Taylor Stevens, Marc Stein, Miguel A. Sanchez, James Pauliks, Keith Evans, Geneyvah Brooks, Kenneth Brochowicz, and Tim Breninger (the "Opt-in Plaintiffs"[3]), in addition to Plaintiffs Kaynaroglu and Rodriguez. (*Id.*, Ex. A.) Previously, Avis, Plaintiffs, and the Opt-in Plaintiffs had executed a tolling agreement regarding potential FLSA claims, effective October 11, 2023 (the "Tolling Agreement"). (ECF No. 36-3, Ex. A, ¶ 2.) On August 14, 2024, Avis moved to dismiss Plaintiffs'

---

[3] Several additional individuals (Andrew North, Niya Lloyd, Anthony Ramirez, and Luis Hiciano) submitted Consent to Join forms in subsequent filings and are included in references to the Opt-in Plaintiffs. (ECF Nos. 3, 6, 27, 41.)

FLSA claim pursuant to Fed. R. Civ. P. 12(b)(6).[4] (ECF No. 20.) On August 16, 2024, Plaintiffs filed the Notice Motion, pursuant to 29 U.S.C. § 216(b). (ECF No. 22.) Attached to the Notice Motion were declarations from Plaintiffs, as well as declarations from Geneyvah Brooks, Keith Evans, Miguel Sanchez, Alesha Taylor, Jim Paulkis, Niya Lloyd, and Taylor Stevens. (ECF Nos. 22-3–22-13.) Plaintiffs opposed the Motion to Dismiss in a filing on October 3, 2024, which included the Swartz Declaration. (ECF Nos. 34, 34-1.) On the same day, Avis opposed the Notice Motion. (ECF No. 35.) Avis then moved to strike the Swartz Declaration as improper under District Court of New Jersey Local Civil Rule 7.2(a) ("Local Rule 7.2(a)") (ECF No. 36) and also filed a Reply in Support of the Motion to Dismiss (ECF No. 37) on October 14, 2024. On October 15, 2024, Plaintiffs filed a Reply in Support of the Notice Motion (ECF No. 38). Plaintiffs filed an Opposition to the Motion to Strike on November 4, 2024 (ECF Nos. 39, 39-1), and Avis filed a Reply in Support of the Motion to Strike on November 12, 2024 (ECF No. 40).

## II.    MOTION TO DISMISS

Avis moves to dismiss the Complaint because Plaintiffs' claims are barred by the statute of limitations. First, Avis argues Plaintiffs do not adequately plead a willful violation of the FLSA, which would entitle them to a three-year statute of limitations. (ECF No. 20-1 at 4–10.) Absent a showing of willfulness, Avis asserts a two-year statute of limitations applies, and Plaintiffs "do not (and could not) allege they worked unpaid overtime during the two-year period preceding the filing of their lawsuit" in June 2024, as both Plaintiffs had ended their employment with Avis by

---

[4] Avis initially filed the Motion to Dismiss on August 1, 2024 (ECF No. 13), but the Court administratively terminated this motion for failing to comply with the undersigned's judicial preference that parties file a pre-motion letter requesting a conference (ECF No. 15). After the parties filed letters in accordance with this preference (ECF Nos. 16, 18), the Court reviewed them, determined a pre-motion conference "would not be beneficial," and ordered the parties to proceed with motion practice (ECF No. 19).

August 2021. (*Id.* at 4.) Plaintiffs' Opposition primarily asserts they have adequately plead willfulness but also argues, in the event this Court disagrees, that four of the Opt-In Plaintiffs—Alesha Taylor, Jim Pauliks, Geneyvah Brooks, and Keith Evans—have timely claims under the two-year statute of limitations. (ECF No. 34 at 7.) The Swartz Declaration, attached to Plaintiffs' Opposition and the subject of the Motion to Strike, makes statements relevant only to this alternative argument. (*Id.*; ECF No. 34-1.) Therefore, the Court first determines if the FLSA's three-year statute of limitations applies, as it has the potential to moot the Motion to Strike (and, as discussed *infra*, it does). The Court then turns to the Notice Motion.

### A. Legal Standard

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court

may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

## B. Decision

As described above, Avis makes a twofold argument for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs' claims are barred by the statute of limitations, first for failure to allege a willful violation, and second for not alleging Plaintiffs worked unpaid overtime hours in the two years prior to the lawsuit, as Plaintiffs were not employed by Avis in that period. (ECF No. 20-1 at 4–10.) Avis does not allege Plaintiffs' pleadings are deficient of the other elements of an FLSA claim. (*Id.*)

In response, Plaintiffs argue willfulness cannot be decided at the pleading stage (ECF No. 34 at 3–4) but also contend they have adequately plead Avis acted willfully based on their allegations "Avis was on notice that it was violating the FLSA by misclassifying assistant-level managers, did not take remedial action, and (despite prior litigation) continued to classify OMs as exempt from overtime pay to save money on labor costs" (*id.* at 4 (citing ECF No. 1 ¶¶ 4, 37–38)). In the alternative, Plaintiffs point to four Opt-In Plaintiffs—Alesha Taylor, Jim Pauliks, Geneyvah Brooks, and Keith Evans—who they contend have timely claims under the two-year statute of

limitations and request leave to amend the Complaint to add them as named plaintiffs and amend the pleadings more generally as to Avis's willfulness. (*Id.* at 7.)

"Ordinarily, statutes of limitations are raised as defenses in the answer to a complaint." *Hernandez v. Polly Inc.*, Civ. A. No. 2:21-244, 2022 WL 17850347, at *5 (D.N.J. Dec. 21, 2022) (citing Fed. R. Civ. P. 8(c)). However, the Third Circuit allows a party to raise a limitations defense in a Rule 12(b) motion if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations," an approach known as the "Third Circuit Rule." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)). As the sufficiency of Plaintiffs' allegations on Avis's willfulness under the FLSA will govern the appropriate statute of limitations, the Court first examines the pleadings on this issue.

### 1. Willful Violation

Avis argues that, to establish a willful violation such that the three-year statute of limitations applies, a plaintiff must allege facts that "could support more than an ordinary FLSA violation," meaning they create a plausible suggestion the employer "acted recklessly or intentionally." (ECF No. 20-1 at 5 (quoting *Buchspies v. Pfizer, Inc.*, Civ. A. No. 18-16083, 2019 WL 5078853, at *4 (D.N.J. Oct. 10, 2019)).) Avis contends courts in the Third Circuit have found that allegations an employer failed to pay overtime in a willful or reckless manner are insufficient, on their own, to provide the factual basis for an inference of willfulness. (*Id.* (citing *Cherry v. Borough of Tuckerton*, Civ. A. No. 16-0505, 2016 U.S. Dist. LEXIS 143221, at *18 (D.N.J. Oct. 17, 2016)).) Applying these principles to the Complaint, Avis asserts Plaintiffs' description of its allegedly unlawful policies and practice of misclassification is "conclusory" and lacks "supporting facts." (*Id.* at 6.) Avis cites several cases from this Circuit it contends dismissed FLSA claims with

10

similar allegations to those in the Complaint. (*Id.* at 7 (citing *Buchspies*, 2019 WL 5078853, at *4; *Smeltzer v. Eaton Corp.*, Civ. A. No. 17-843, 2018 WL 3496948, at *2 (W.D. Pa. July 20, 2018); *Everett v. Maternal Child Consortium, LLC*, Civ. A. No. 18-746, 2018 WL 3374763, at *4 (E.D. Pa. July 10, 2018); *Mell v. GNC Corp.*, Civ. A. No. 10-945, 2010 WL 4668966, at *8–9 (W.D. Pa. Nov. 9, 2010); *Hopkins v. JG Assocs.*, Civ. A. No. 12-04542, 2013 U.S. Dist. LEXIS 101183, at *4–5 n.1 (D.N.J. July 19, 2013); *Livers v. Nat'l Collegiate Athletic Assoc.*, No. 17-4271, 2018 WL 2291027, at *8 (E.D. Pa. May 17, 2018)).) Further, Avis disputes that Plaintiffs' allegations regarding prior lawsuits it settled over the classification of assistant-level managers could support finding a willful violation of the FLSA, arguing federal courts have rejected similar allegations. (*Id.* at 8–9.) Finally, Avis asserts a willful violation of the FLSA "must occur during the third year preceding the date the complaint is filed" (here, June 7, 2021–June 7, 2022), and Plaintiffs allege only one instance where Plaintiff Rodriguez worked more than 40 hours without overtime wages, without making specific allegations of willfulness. (*Id.* at 10–11.)

For their part, Plaintiffs assert the allegations in the Complaint regarding Avis's willfulness are sufficient to survive the Motion to Dismiss. First, Plaintiffs contend willfulness is a question of fact inappropriate for resolution at the pleading stage. (ECF No. 34 at 3 (citing *Reed v. Friendly's Ice Cream, LLC*, Civ. A. No. 15-298, 2016 U.S. Dist. LEXIS 62197, at *19 (M.D. Pa. May 11, 2016); *Cacchione v. Erie Tech. Prods., Inc.*, 526 F. Supp. 272, 275 (W.D. Pa. 1981); *Freeman v. Sam's East, Inc.*, Civ. A. No. 17-1786, 2021 U.S. Dist. LEXIS 144906, at *2–3 (D.N.J. Aug. 3, 2021)).) Nonetheless, Plaintiffs argue the facts as pled are sufficient to demonstrate Avis's willfulness because they establish Avis: (1) did not inquire into the propriety of the OMs exempt classification or perform individualized evaluations of Plaintiffs' and OMs' duties; (2) "knew or should have known" OMs were misclassified, based on prior lawsuits against them; and (3) "never

paid overtime wages and did not keep track of Plaintiffs' hours worked." (*Id.* at 4–6.) Plaintiffs cite cases from this District to argue a prior lawsuit alleging FLSA violations can put an employer on notice of employee misclassification. (*Id.* (citing *D'Alessio v. Cnty. of Essex*, Civ. A. No. 18-10731, 2021 WL 5413987, *5–6 (D.N.J. Nov. 19, 2021); *Stillman v. Staples, Inc.*, Civ. A. No. 07-849, 2009 U.S. Dist. LEXIS 42247, at *49–51 (D.N.J. May 11, 2009)).) Additionally, Plaintiffs assert cases Avis cites to support the Motion to Dismiss are distinguishable because Plaintiffs' allegations make clear "Avis knew that it was not paying Plaintiffs for overtime hours worked" since "Avis classified OMs as exempt from overtime pay, failed to record OMs' hours, and required them to work in excess of 40 hours per week." (*Id.* at 6.)

In reply, Avis reasserts that willfulness is appropriate to review at the pleading stage, arguing Plaintiffs cite to inapposite cases (some of which predate the *Twombly/Iqbal* pleading standard) and ignore the multiple cases from this Circuit cited by Avis in which courts "granted motions to dismiss on the question of willfulness." (ECF No. 37 at 2–4.) Avis also challenges Plaintiffs' assertion that Avis's failure to provide Plaintiffs overtime pay or track their hours creates a factual basis for a willful violation, arguing this threshold would make every FLSA misclassification claim willful by default, in contravention of the "two-tiered statute of limitations" enacted by Congress. (*Id.* at 5–6.) Instead, Avis contends a willful violation of the FLSA must allege more than the statutory elements of a misclassification claim, as the three-year statute of limitations is an "exception." (*Id.* at 7 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988)).) Avis also attacks Plaintiffs' allegations it failed to inquire into the proper classification of OMs as made only "upon information and belief," arguing the Court is not bound to accept them as true. (*Id.* at 8 n.2.) Finally, Avis reiterates Plaintiffs' allegations of past lawsuits against it alleging FLSA violations are insufficient to survive a motion to dismiss, pointing to a

Sixth Circuit opinion that opined on how other factors, such as the decision to issue a notice to employees, may drive the decision to settle an FLSA claim rather than its merits. (*Id.* at 9 (citing *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1007 (6th Cir. 2023)).) Avis also argues the cases on which Plaintiffs rely to argue the lawsuits have probative value come from post-trial and summary judgment motions and are therefore distinguishable. (*Id.* at 9.)

As Avis's briefings demonstrate, courts in this Circuit often assess whether willfulness under the FLSA was sufficiently plead on a motion to dismiss. *See, e.g.*, *Buchspies*, 2019 WL 5078853 at *4 (considering allegations of willfulness on motion to dismiss); *Smeltzer*, 2018 WL 3496948 at *2–3 (same); *Everett*, 2018 WL 3374763 at *4 (same); *Ochoa v. Pearson Educ., Inc.*, Civ. A. No. 11-1382, 2012 WL 95340, at *3 (D.N.J. Jan. 12, 2012) (finding same and laying out required allegations of willfulness "[t]o satisfy the *Iqbal* pleading requirements"). Indeed, Plaintiffs cite at least one case where a court in this District analyzed the allegations of willfulness for sufficiency at the pleading stage. *See Hernandez*, 2022 WL 17850347 at *5 ("Here, Plaintiff has pleaded sufficient facts to support the reasonable inference that the FLSA violations allegedly committed by Defendants were willful."). However, like with all allegations related to a statute of limitations defense, "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Robinson*, 313 F.3d at 136 (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

Under the FLSA, a willful violation is one where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin*, 486 U.S. at 133. "Acting only 'unreasonably' is insufficient [to demonstrate a willful violation] – some degree of actual awareness is necessary." *Souryavong v. Lackawanna Cnty*, 872 F.3d 122, 126 (3d Cir. 2017) (quoting *McLaughlin*, 486 U.S. at 135 n.13). A finding of willfulness

may be shown by "a degree of egregiousness." *Souryavong*, 872 F.3d at 127. However, the Third Circuit has also held that "evident indifference toward the requirements imposed by the FLSA" is satisfactory to constitute a willful violation. *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1296 (3d Cir. 1991); *see also Stone v. Troy Constr., LLC*, 935 F.3d 141, 149 n.10, 150 (3d Cir. 2019) (affirming "evident indifference" holding of *Selker Bros.* and stating "[e]gregiousness is . . . a high-water mark, representing behavior that clearly establishes willfulness, as opposed to a baseline requirement for such a finding"); *Antoine v. KPMG Corp.*, Civ. A. No. 08-6415, 2010 WL 147928, at *8 (D.N.J. Jan. 6, 2010) (finding willfulness sufficiently pled in proposed amended complaint where plaintiffs alleged "similar job duties," "uniform employment practices and policies" (including hourly compensation and no overtime pay), defendants knew "[p]laintiffs routinely worked over forty hours without compensation" for non-exempt tasks, defendants classified plaintiffs as non-exempt, and defendants "failed to maintain accurate records" for plaintiffs' overtime hours). At the pleading stage, an FLSA plaintiff must do more than "merely assert that the employer's conduct was willful; the Court must look at the underlying factual allegations in the complaint to see if they could support more than an ordinary FLSA violation[.]" *Ochoa*, 2012 WL 95340 at *3 (finding alleged violation not willful because plaintiff alleged only that he was instructed to submit timesheets showing no more than 40 hours worked per workweek and conclusorily alleged deliberate misclassification).

Upon review of the Complaint and in light of the Third Circuit Rule's admonition a statute of limitations bar "must be apparent on the face of the complaint" to grant dismissal on the pleadings, *Robinson*, 313 F.3d at 136, Plaintiffs have adequately alleged any FLSA misclassification violation was willful. Accepted as true, the Complaint lays out a pattern of awareness by Avis that OMs' duties, standardized across the company, were primarily non-

exempt, such as "general customer service and vehicle preparation for rental." (ECF No. 1 ¶ 44.) Plaintiffs also allege the FLSA Collective regularly worked more than 40 hours a week, despite being paid "a weekly salary for 40 hours for their services," and Avis was motivated "to misclassify OMs as exempt to save millions of dollars annually in labor costs." (*Id.* ¶¶ 38, 45.) Courts have found similar allegations "give rise to a reasonable inference that Defendants knew that [the plaintiff] was not exempt from the FLSA's overtime requirements" and classified them as exempt to circumvent overtime requirements. *Montoya v. Havana Cent. NY 2, LLC*, Civ. A. No. 23-111, 2024 WL 874640, at *5–6 (S.D.N.Y. Jan. 8, 2024) (finding plaintiff plausibly stated misclassification was willful because employer knew plaintiff performed non-exempt tasks and worked over 40 hours weekly without compensation, and was motivated to misclassify employees "to accomplish their business goals"), *report and recommendation adopted*, Civ. A. No. 1:23-00111, 2024 WL 871206 (S.D.N.Y. Feb. 29, 2024); *see also Antoine*, 2010 WL 147928 at *8; *Garcia v. Tenafly Gourmet Farms, Inc.*, Civ. A. No. 11-6828, 2012 WL 715316, at *2 (D.N.J. Mar. 5, 2012) (finding willfulness sufficiently pled where plaintiff alleged regularly working more than 40 hours without recording hours). Additionally, the Complaint asserts Avis was "put on notice" that it may have been misclassifying "assistant-level managers," like OMs, through prior litigation, and that Avis failed to make either "a good faith inquiry" or "perform an individualized assessment" into the exempt classification of OMs. (*Id.* ¶¶ 37–38, 48–49.) Together, these allegations paint a picture of "evident indifference toward the requirements imposed by the FLSA," which the Third Circuit has held can constitute willfulness. *Selker Bros.*, 949 F.2d at 1296.

While Avis takes issue with the allegations regarding prior litigation and its investigation into the exempt status of OMs, neither argument persuades the Court that Plaintiffs' claim should not proceed at this juncture. Regarding prior litigation, while Avis cites one case in which a court

in this District found a prior FLSA lawsuit that never reached the merits did not render the defendant's violation there willful, the plaintiff there relied solely on the prior suit and his direct manager's knowledge. *See Freeman v. Sam's East, Inc.*, Civ. A. No. 2:17-1786, 2021 WL 3362611, at *3 (D.N.J. Aug. 3, 2021). Here, Plaintiffs allege a widespread pattern of misclassifying employees across business locations who Avis knew performed primarily non-exempt duties, and in that context, other collective suits for similar roles should have prompted Avis to reevaluate their employee classification policies. (ECF No. 1 ¶¶ 36–38). Additionally, at least one court in this Circuit has accepted prior FLSA lawsuits as evidence probative of willfulness without considering the outcome in those suits. *See, e.g.*, *D'Alessio*, 2021 WL 5413987 at *6 (explaining that "the County has previously been sued by . . . employees for violations of the FLSA," and supervisor was aware of suits, to support finding of willful violation); *accord Karali v. Branch Banking & Tr. Co.*, Civ. A. No. 16-02093, 2018 WL 4676073, at *10 (D.N.J. Sept. 28, 2018) (denying summary judgment on willfulness of plaintiffs' exempt classification because "there is an open question as to whether [defendant] knew, or should have known," about classification determinations by similar employers, holding in case against another employer, and Department of Labor opinion letter). And although Avis notes Plaintiffs' allegations that Avis failed to inquire into the proper classification of OMs were made "upon information and belief," and the Court need not credit them, the Complaint alleges a company-wide approach where OMs consistently performed mostly non-exempt tasks yet were classified as exempt, implying Avis did not reasonably investigate whether such classification was proper. (*Id.* ¶¶ 46–47.)

Discovery may demonstrate Avis did fulsomely consider whether OMs should be classified as non-exempt, and any FLSA violation was not the result of knowing or reckless disregard. However, on the face of the Complaint, Plaintiffs allege sufficient facts as to willfulness that the

Court cannot bar them from asserting Avis's violation was willful, and therefore entitled to a three-year statute of limitations. *See Robinson*, 313 F.3d at 136.

In the alternative, Avis argues Plaintiffs have not alleged a specific instance of a willful failure to pay overtime in the third year before they filed the Complaint, citing out of Circuit case law. (ECF No. 20-1 at 10 (citing *Solis v. La Familia Corp.*, Civ. A. No. 10- 2400, 2013 U.S. Dist. LEXIS 19899, at *23 (D. Kan. Feb. 14, 2013)).) Courts in this Circuit, however, have consistently stated "[a]n FLSA claim 'accrues for overtime compensation at each regular payday immediately following the work week during which the services were rendered.'" *Smeltzer v. Eaton Corp.*, Civ. A. No. 17-843, 2018 WL 3496948, at *3 (W.D. Pa. July 20, 2018) (quoting *Gulick v. City of Pittston*, 995 F. Supp. 2d 322, 338 (M.D. Pa. 2014)); *see also Vasquez v. Spain Inn, Inc.*, Civ. A. No. 19-452, 2019 WL 5258197, at *3 (D.N.J. Oct. 17, 2019) ("A cause of action under FLSA 'accrues' whenever the employer fails to pay the required compensation for any particular workweek." (quoting *Griffin v. Dep't. of Human Servs.*, Civ. A. No. 18-14697, 2019 WL 3369783, at *6 (D.N.J. July 26, 2019))). Where a plaintiff pleads willfulness, courts in this District accept general allegations the plaintiff consistently worked more than 40 hours in a week without overtime pay during the three years prior to the date the Complaint was filed. *See, e.g.*, *Garcia*, 2012 WL 715316 at *3 (finding claims for all overtime during three-year period prior to filing could proceed where plaintiff alleged consistently working more than 40 hours a week); *Vasquez*, 2019 WL 5258197 at *3 (same). Here, Plaintiffs clearly allege they "and the members of the FLSA Collective consistently worked more than 40 hours per week." (ECF No. 1 ¶ 41; *see also id.* ¶ 16.) Read in the light most favorable to Plaintiffs, this statement clearly implies they worked over 40 hours every week of their employment with Avis. *See Phillips*, 515 F.3d at 228. Because the Complaint was filed on June 7, 2024, and both Plaintiffs left Avis's employment between June

and August 2021, there is admittedly a very short window for which Plaintiffs are allegedly entitled to recover (for Plaintiff Kaynaroglu, it may be no more than seven days' worth of overtime). (ECF No. 1 ¶¶ 11–16.) Nonetheless, Plaintiffs allege violations of the FLSA's overtime provisions within the statute of limitations, and that is all that is required to survive a Rule 12(b)(6) motion.

Accordingly, Avis's Motion to Dismiss Plaintiffs' FLSA claim is **DENIED**.

### III.    Motion to Strike

Avis asks the Court to strike the Swartz Declaration as improper under Local Rule 7.2(a), which governs the contents of declarations filed in support of motions. (ECF No, 36-1 at 1.) Local Rule 7.2(a) states:

> Affidavits, declarations, certifications and other documents of the type referenced in 28 U.S.C. § 1746 shall be restricted to statements of fact within the personal knowledge of the signatory. Argument of the facts and the law shall not be contained in such documents. Legal arguments and summations in such documents will be disregarded by the Court and may subject the signatory to appropriate censure, sanctions or both.

The Swartz Declaration is brief. (ECF No. 34-1.) Declaring these matters are within his "personal knowledge," Justin M. Swartz, Plaintiffs' counsel, describes the participation of four Opt-in Plaintiffs—Alesha Taylor, Jim Pauliks, Geneyvah Brooks, and Keith Evans—in the Tolling Agreement, which, it states, "tolls their claims from October 11, 2023 to the present." (*Id.* ¶ 3.) The Swartz Declaration also describes each of the four Opt-in Plaintiffs as having worked as OMs and lists the last month and year of their employment at Avis. (*Id.* ¶¶ 4–7.)

Avis contends the Swartz Declaration violates Local Rule 7.2(a)'s requirements of "personal knowledge" of the facts therein and prohibition on legal or factual argument. (ECF No. 36-1 at 4.) But regardless of the validity of these arguments, the Motion to Strike is moot for two reasons. First, as discussed *supra*, the contents of the Swartz Declaration relate solely to Plaintiffs'

argument in the event this Court found they had not adequately pled a willful violation the FLSA and needed to establish claims within two years of the filing of the Complaint. (ECF Nos. 34 at 10; 34-1.) But as the Court finds Plaintiffs sufficiently state a claim for a willful violation of the FLSA, it need not address the alternative argument for which the Swartz Declaration purportedly provides support.

Second, even if the Court were to consider Plaintiffs' two-year statute of limitations argument, the Swartz Declaration addresses facts outside the four corners of the Complaint, which a Court may not consider on a motion to dismiss. *See In re Rockefeller*, 184 F.3d at 287. It is therefore unnecessary to "strike" the Swartz Declaration, as the Court can opt not to consider the material rather than convert the Motion to Dismiss into one for summary judgment, as Avis acknowledges. (ECF No. 37 at 11–12.) Indeed, deciding the Motion to Strike on the merits might force the Court to wade into the kind of competing factual contentions it must avoid at the pleading stage, since Avis relies on its own, non-integral documents to argue for striking the Swartz Declaration. (ECF No. 36-1 at 3 (citing "ECF No. 35-1, ¶¶ 39–42 and Exhibits C and D attached thereto").) The more appropriate place for these contestations of fact is at summary judgment, following the completion of discovery by both sides.

Accordingly, the Motion to Strike is **DENIED AS MOOT**.

IV.    **Notice Motion**

Plaintiffs ask the Court to authorize notice to members of the FLSA Collective of this action, pursuant to 29 U.S.C. § 216(b) and Third Circuit law. (ECF No. 22-1 at 1–9.) Avis argues the Court should reject this application, but if the Court does mandate notice, Avis has several objections to Plaintiffs' proposed notice regime. (ECF No. 35.) The Court first considers whether

to authorize notice, via conditional certification under the Third Circuit precedent, and if so, how such notice should be structured.

### A. Legal Standard

Under the FLSA, a plaintiff may seek to sue on behalf of herself and a collective of "similarly situated" employees.[5] 29 U.S.C. § 216(b); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013) ("A suit brought on behalf of other employees is known as a 'collective action.'"). The FLSA requires potential members of a collective action to opt-in through written consent filed with the court. *See Manning v. Gold Belt Falcon, LLC*, 817 F. Supp. 2d 451, 452 (D.N.J. 2011). The Third Circuit outlined a two-step process for determining whether a plaintiff's FLSA suit may proceed as a collective action. *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013).

"The first step, so-called conditional certification, requires a named plaintiff to make a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) (quoting *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)). If the named plaintiff satisfies her burden, "the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and

---

[5] Title 29 § 216(b) of the U.S. Code provides a private right of action to recover for violations of the FLSA, specifically failure to pay the minimum wage prescribed under 29 U.S.C. § 206 and overtime rates prescribed under 29 U.S.C. § 207. As to overtime, the statute provides "no employer shall employ any . . . employees . . . for a workweek longer than forty hours unless such employee receives compensation . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). "Pursuant to 29 U.S.C. § 216(b), an employee who has been denied overtime compensation may bring an action 'for and in behalf of himself or themselves and other employees similarly situated' who were affected by their employer's common policy." *White v. Rick Bus Co.*, 743 F. Supp. 2d 380, 386 (D.N.J. 2010).

conducting pre-trial discovery." *Camesi*, 729 F.3d at 243. Therefore, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Symczyk*, 569 U.S. at 75 (citations omitted).

The second step, referred to as the "final certification" step, occurs after the benefit of discovery and requires a plaintiff to establish by a preponderance of the evidence that the named plaintiff and opt-in plaintiffs are similarly situated. *Maddy v. Gen. Elec. Co.*, 59 F. Supp. 3d 675, 681 (D.N.J. 2014) (citing *Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 78 (D.N.J. 2014)). At the second step, a court makes "a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiffs." *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013). At this stage, "the court considers whether individualized differences among the plaintiffs make the claims more suitable for individualized, as opposed to class, treatment." *Steinberg v. TD Bank, N.A.*, Civ. A. No. 10-5600, 2012 U.S. Dist. LEXIS 89086, at *19 (D.N.J. June 27, 2012).

Unlike the final certification step, conditional certification is "not a true certification, but rather an exercise of the court's discretionary authority to oversee and facilitate the notice process." *Halle*, 842 F.3d at 224. The merits of a plaintiff's underlying FLSA claim are not assessed at the conditional certification stage. *Goodman v. Burlington Coat Factory*, Civ. A. No. 11-4395, 2012 U.S. Dist. LEXIS 166910, at *24 (D.N.J. Nov. 20, 2012). Rather, the Third Circuit has instructed courts to apply "a 'fairly lenient standard' at the first step" in order to "make[] a preliminary determination as to whether the named plaintiffs have made a 'modest factual showing' that the employees identified in their complaint are 'similarly situated.'" *Camesi*, 729 F.3d at 243 (quoting *Zavala*, 691 F.3d at 536 n.4). Consequently, "some courts have required nothing more than

21

'substantial allegations that the putative class members were together the victims of a single decision, policy or plan.'" *Moeck v. Gray Supply Corp.*, Civ. A. No. 03-1950, 2006 U.S. Dist. LEXIS 511, at *12–13 (D.N.J. Jan. 5, 2006) (citing *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)).

"A 'modest factual showing' requires the plaintiff to 'produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Adami*, 299 F.R.D. at 78 (quoting *Zavala*, 691 F.3d at 536 n.4); *Symczyk*, 656 F.3d at 193. In making this determination, a court examines "both the pleadings and affidavits in support of or in opposition to the proposed collective action." *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 569 (D.N.J. 2014); *see also Ying Yang v. Vill. Super Mkt., Inc.*, Civ. A. No. 18-10486, 2019 U.S. Dist. LEXIS 46230, at *7–8 (D.N.J. Mar. 20, 2019) (finding at the conditional certification stage, courts "routinely permit plaintiff[s] to submit 'evidence through . . . declarations, including any hearsay statements contained therein'") (citation omitted)); *Asirifi v. W. Hudson Sub-Acute Care Ctr., LLC*, Civ. A. No. 11-04039, 2014 U.S. Dist. LEXIS 9281, at *4 (D.N.J. Jan. 24, 2014) ("At this stage, the court usually only has evidence before it in the form of pleadings and affidavits, so it uses a fairly lenient standard to determine whether potential collective action members are similarly situated and the court's determination 'typically results in conditional certification of a representative class.'") (citing *Herring v. Hewitt Assocs., Inc.*, Civ. A. No. 06-267, 2007 U.S. Dist. LEXIS 53278 at *7 (D.N.J. July 27, 2007)). If the plaintiff satisfies this burden, "the court 'conditionally certifies' the collective action for the purposes of notice and pretrial discovery." *Adami*, 299 F.R.D. at 78 (citing *Zavala*, 691 F.3d at 536). Notwithstanding, even if the court grants conditional certification and approves dissemination of notice to putative plaintiffs, "there is

nothing to prevent a court from 'modifying or reversing a decision on similar situations at a later time in the action, as new facts emerge.'" *Herring*, 2007 U.S. Dist. LEXIS 53278, at *12 (quoting *Sperling v. Hoffman-LaRoche*, 118 F.R.D. 392, 407 (D.N.J. 1988)).

### B. Conditional Certification

The parties disagree over the proper standard for evaluating whether conditional certification (and therefore notice) is appropriate. Plaintiffs point to the Third Circuit's decisions in *Symczyk* and *Zavala* to argue that, for conditional certification, they need only make a '"modest factual showing,' which includes some evidence, 'beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees,'" which can be satisfied via evidence not obtained through discovery, such as declarations and job postings. (ECF No. 22-1 at 7–8 (quoting *Symczyk*, 656 F.3d at 193 (internal quotations omitted)).)

Avis contends further discovery is required on whether members of the FLSA Collective are similarly situated based on approaches to FLSA certification taken in other Circuit courts. (ECF No. 35 at 8–9.) Avis argues that, following the Supreme Court's decision in *Hoffmann La-Roche, Inc. v. Sperling*, 493 U.S. 165 (1989), which sanctioned court-authorized notice for FLSA claims under 29 U.S.C. § 216(b), district courts developed "four leading approaches" to evaluating requests for notice. Avis essentially condenses these four approaches into two: the "two-step process," *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), with (1) a conditional certification prior to discovery based on "a modest factual showing," and (2) a final certification following discovery (*id.* at 10–11); and approaches from outside this Circuit which require a heightened showing from FLSA plaintiffs, either by fulfilling Rule 23 class certification requirements, engaging in early discovery on the issue of similarity, or meeting a heightened standard akin to

that to obtain a preliminary injunction or to defeat summary judgment (*id.* at 11–13 (citing *Shushan v. University of Colorado*, 132 F.R.D. 263, 265 (D. Colo. 1990); *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 441–43 (5th Cir. 2021); *Clark v. A & L Homecare & Training Ctr., LLC*, 68 F. 4th 1003, 1009, 1011 (6th Cir. 2023)).) Avis goes on to argue that, contrary to Plaintiff's reading, the Third Circuit did not adopt *Lusardi*'s two-step process in *Smyczck*, and this Court should reject that approach as not grounded in the history or text of the FLSA or the Rules of Civil Procedure, contrary to principles of judicial economy, injurious to employer-defendants by creating perverse incentives for meritless lawsuits, and compromising the court's neutrality on the merits of the action. (*Id.* at 13–19.) Avis further asserts the *Lusardi* approach's dominance among district judges "is largely the product of 'anchoring bias.'" (*Id.* at 19.) Instead, Avis contends the Court should apply the *Swales* approach from the Fifth Circuit and authorize preliminary discovery into facts material to the issue of similarity, which Plaintiffs would have to prove by a preponderance of evidence. (*Id.* 20–22.)

In response, Plaintiffs argue the Third Circuit has reaffirmed the two-step certification process since *Symczyck*, and "[e]very district court in the Third Circuit to consider *Swales* has soundly rejected it." (ECF No. 38 at 1.) The Court agrees.

Numerous Third Circuit decisions following *Symczyck* plainly endorse the two-step certification approach. *See Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) ("Courts in our Circuit follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA."); *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) ("Because there are no formal procedural rules that mandate how to accomplish this task, courts have developed a practical approach to managing FLSA collective actions. This approach, which has been recognized by the Supreme Court and is widely

accepted in most jurisdictions, is a two-step certification process."); *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85 (3d Cir. 2017) (quoting *Halle* and affirming "[c]ourts in this circuit use a two-step certification process"); *In re Citizens Bank, N.A.*, 15 F.4th 607, 612 (3d Cir. 2021) (describing differences between "an FLSA opt-in collective action and a Rule 23(b)(3) opt-out class action" and how, in the former, "after a modest factual showing by the named plaintiffs, a district court must first conditionally certify that the proposed collective action plaintiffs are similarly situated" (internal quotations omitted)); *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 123 n.1 (3d Cir. 2018) (same). Indeed, in *Halle*, the Third Circuit rejected the "minority approach" of a Rule 23-like evaluation. 842 F.3d at 224 n.7. The Fifth Circuit's *Swales* opinion was issued several months prior to the Third Circuit's most recent ruling discussing FLSA certification, *In re Citizens*, 15 F.4th 607, and Avis provides no law from this Circuit even suggesting the Court of Appeals might reconsider its repeatedly affirmed approach.[6] The Court will therefore apply the two-step process, as Third Circuit precedent dictates. *See Halle*, 842 F.3d 215 at 224.

Plaintiffs assert they have met their burden to demonstrate they are "similarly situated" to the potential opt-ins from the FLSA Collective for the purposes of conditional certification under the Third Circuit's framework. (ECF No. 22-1 at 9.) First, Plaintiffs argue they are similarly situated with respect to their FLSA claims because Avis had a "uniform policy [of misclassifying]

---

[6] Courts within the Circuit have uniformly rejected requests to apply *Swales* in lieu of the two-step process. *See Marcy v. Select Med. Corp.*, Civ. A. No. 1:23-469, 2023 WL 9074622, at *1 n.1 (M.D. Pa. Nov. 1, 2023) ("Defendants urge the court to follow other circuits that 'have begun to reexamine and reject the traditional two-step certification process and its low initial evidentiary standard.' . . . We will deny [this request.] Our court of appeals has unequivocally endorsed the two-step certification process for managing FLSA collective actions, and we will apply it faithfully to the matter *sub judice*."); *Burrell v. Lackawanna Recycling Ctr., Inc.*, Civ. A. No. 3:14-1891, 2024 WL 2055003, at *5–6 (M.D. Pa. May 6, 2024) (rejecting approaches in *Swales* and *Clark* and collecting district court cases from Circuit where courts found argument for *Swales* test "to be without merit" based on *Halle*).

OMs from the FLSA's overtime requirements" and failing to pay them overtime as required under the statute. (*Id.* at 10.) Plaintiffs contend courts in this Circuit have repeatedly authorized notice based on little more than "the existence of a blanket policy like Avis's." (*Id.* (citing *Russo v. Gov't Emps. Ins. Co.*, Civ. A. No. 17-234, 2022 U.S. Dist. LEXIS 138784, at *12–13 (D.N.J. Jun. 9, 2024); *Manning v. Goldbelt Falcon, LLC*, Civ. A. No. 08-3427, 2010 U.S. Dist. LEXIS 104029, at *7 (D.N.J. Sep. 29, 2010); *Matthews v. Phila. Corp. for Aging*, Civ. A. No. 22-4632, 2023 U.S. Dist. LEXIS 98894, at *7–9 (E.D. Pa. June 7, 2023); *Alvarez v. BI Inc.*, Civ. A. No. 16-2705, 2018 U.S. Dist. LEXIS 83901, at *29 (E.D. Pa. May 17, 2018); *Meals v. Keane Frac GP LLC*, Civ. A. No. 16-1674, 2017 U.S. Dist. LEXIS 86149, at *11, *17 (W.D. Pa. June 6, 2017); *Bell v. Citizen Fin. Grp., Inc.*, Civ. A. No. 10-320, 2010 U.S. Dist. LEXIS 91172, at *8 (W.D. Pa. Sept. 2, 2010)).) As a result, Plaintiffs contend they and other OMs "have suffered the similar harm of working in excess of 40 hours" without an overtime premium. (*Id.* at 11.)

Second, Plaintiffs argue the evidence they present with their motion—"nine declarations describing similar duties from at least sixteen different locations in eight states and Puerto Rico from OMs; two job postings describing consistent duties for all OMs; and two OM offer letters reflecting a consistent compensation scheme"—sufficiently demonstrates they are similarly situated to the FLSA Collective "with respect to their job duties," again pointing to cases within the Circuit they contend granted conditional certification on similar evidence. (*Id.* at 11–12.) Plaintiffs cite their and the Opt-in Plaintiffs' descriptions of their experiences on the job to describe OM duties as "uniform" responsibilities for customer service and manual labor. (*Id.* at 2–3.) Plaintiffs point to passages from postings from OM roles describing OMs as "part of the 'front-line team'" and "provid[ing] customer service, prepar[ing] returned rentals for the next rental, and inspect[ing] vehicles." (*Id.* at 3 (quoting ECF No. 22-14).) While Plaintiffs acknowledge the OM

26

job descriptions "discuss some supervisory duties," Plaintiffs assert these duties are "circumscribed by higher-level managers who . . . possess the true managerial authority" necessary to be exempt. (*Id.*) Plaintiffs highlight job postings for "Airport Managers" and "District Manager," examples of OM supervisor roles, as evidence OMs do not possess managerial authority. (*Id.* at 3–4.) Plaintiffs also cite several opinions, including one from this District, where courts granted motions for conditional certification "on behalf of collectives of Avis employees who perform similar job functions." (*Id.* at 12 (citing *Ruffin v. Avis Budget Car Rental, LLC*, Civ. A. No. 11-1069, 2012 U.S. Dist. LEXIS 89651, at *4, *18 (D.N.J. Jun. 28, 2012); *Espanol v. Avis Budget Car Rental, LLC*, Civ. A. No. 8:10-944, 2011 U.S. Dist. LEXIS 120485, at *7–8 (M.D. Fla. Oct. 18, 2011); *Ravenell v. Avis Budget Car Rental, LLC*, Civ. A. No. 08-2113, 2010 U.S. Dist. LEXIS 72563, at *16 (E.D.N.Y. July 19, 2010)).) Finally, Plaintiffs argue the Court may not consider any minor differences Avis might raise at this stage regarding OM duties or compensation because those disputes wade into the merits of the FLSA claims or Avis's defenses, both of which are not assessed in the conditional certification phase of the two-step process. (*Id.* at 13–14.)

Avis argues this Court should not grant conditional certification of the FLSA Collective because Plaintiffs fail to "provide *evidence* of a common, unlawful policy or practice," in that they do not show it was unlawful for Avis to have classified OMs as overtime exempt. (ECF No. 35 at 22–23.) Avis first contends the Court must disregard any declaration attached to the Notice Motion where the declarant's employment with Avis falls outside the statute of limitations period.[7] (*Id.* at 23.) Further, Avis asserts that, because opt-in plaintiffs to an FLSA collective action "are deemed

---

[7] As in the Motion to Dismiss, Avis argues the appropriate statute of limitations under the FLSA is two years. (ECF No. 35 at 23–24.) Since the Court has ruled Plaintiffs state a willful violation of the FLSA and are entitled to move forward with a three-year statute of limitations, the Court evaluates Avis's general argument about the appropriate time period for the FLSA Collective through the lens of this determination.

to have commenced their action as of the date on which they file a written consent form," the timeframe for the FLSA Collective in this action should be determined by when potential members could file a notice to opt in. (*Id.* at 23–24.) Based on a calculation of the earliest date by which the Court could authorize notice following briefing on the Notice Motion, Avis argues the FLSA Collective could not include anyone who worked for the company prior to January 2, 2022, and therefore the Court cannot consider the declarations of Plaintiffs Kaynaroglu and Rodriguez or Opt-in Plaintiffs Brooks, Evans, Sanchez, or Stevens. (*Id.* at 24–25 (citing *In re Wawa, Inc. Data Sec. Litig.,* 2021 WL 2073758, at *5 (E.D. Pa. May 24, 2021)).)

Second, Avis argues the offer letters and job descriptions Plaintiffs attached to the Notice Motion undercut their argument Plaintiffs are similarly situated. (*Id.* at 26–27.) Avis argues the offer letters to Opt-in Plaintiffs Taylor and Pauliks for roles as "Operation Manager Trainee[s]" either provide no relevant information on job duties or "actually describ[e] exempt duties" such as exercising "managerial oversight" after a training period.[8] (*Id.* at 26.) Similarly, Avis points to language in the Operations Manager job postings Plaintiffs provided they contend discusses exempt duties, such as "supervis[ing] one or more of the daily operations and sales functions" (*id.* at 26 (quoting ECF No. 22-14)) and "[being] responsible for the development of new employees and the on-going performance assessment of current employees" (*id.* at 26–27 (quoting ECF No. 22-15)). Avis also asserts the job descriptions Plaintiffs provide for "Airport Manager" and

---

[8] Additionally, Avis contends these offer letters are outside the relevant period discussed above, as they are dated February 7, 2018, and September 25, 2019, respectively. (ECF No. 35 at 26.)

"District Manager" positions are irrelevant to assessing the "duties and responsibilities of OMs" and whether they should be overtime exempt. (*Id.* at 27.)

Additionally, Avis contends the Court should give no weight to the allegations in the Complaint or the declarations they consider within the relevant timeframe. (*Id.* at 27–31.) Avis cites case law indicating complaint allegations, either alone or in combination with "repetitive affidavits," are insufficient to support conditional certification. (*Id.* at 27–28 (quoting *Shoop v. Justiceworks Youthcare, Inc.*, Civ. A. No. 2:21-732, 2022 WL 1748390 at \*2–3 (W.D. Pa. May 31, 2022); *Garcia v. Vertical Screen, Inc.*, 387 F. Supp. 3d 598, 603–04 (E.D. Pa. 2019)).) Ignoring those declarations it believes are outside the relevant timeframe, Avis argues Plaintiffs are left with the declarations of Opt-in Plaintiffs Taylor and Lloyd, both of whom worked at Avis locations in New York City and whose declarations Avis claims are devoid of detail regarding the job duties of other OMs. (*Id.* at 28–29.) Avis also asserts these declarations "shed no light as to whether these other employees were performing management duties concurrently with non-exempt work which, as a matter of law, exempt employees may do," and without more detail, Taylor and Lloyd's statements they witnessed other employees spending unspecified amounts of time on non-exempt tasks is insufficient to show they are similarly situated. (*Id.* at 29–30.) Finally, Avis contends these declarations, as well as the others that Plaintiffs submitted, are "cookie cutter" and "functionally identical" to one another, meaning they are entitled to little or no weight. (*Id.* at 30–31.)

In reply, Plaintiffs assert Avis did not contest OMs were classified as overtime exempt, were subject to the same compensation and received an annual salary, worked over 40 hours a week, had a "common job description" that included "work[ing] at the customer service counter, provid[ing] customer service, prepar[ing] returned rentals for the next rental, and inspect[ing] vehicles" (ECF No. 38 at 2–3), and Plaintiffs and the FLSA Collective "allegedly suffered from

the same scheme," which they contend is sufficient for conditional certification (*id.* at 3 (quoting *Russo*, 2022 U.S. Dist. LEXIS 138784 at *12)). Plaintiffs argue any inquiry beyond those facts into whether Plaintiffs are in fact "similarly situated" to prospective opt-in plaintiffs may be deferred to the second stage. (*Id.*) Plaintiffs also argue Avis's points about timeliness ignore the parties' tolling agreement, which was not cancelled until June 25, 2024, and was in effect as of October 23, 2024. (*Id.* at 4.) Additionally, Plaintiffs reiterate the declarations from former OMs across eight states and Puerto Rico show "a widespread common policy" sufficient to make the modest factual showing required, including through the personal details in the declarations about duties performed, hours worked, and observations of other OMs referenced by name with similar experiences. (*Id.* at 5–6.) Plaintiffs also cite cases where courts rejected arguments that similarities between employee declarations cut against their value. (*Id.* at 7.) And Plaintiffs contend all of Avis's remaining arguments are about inappropriate "credibility, merits, and damages" issues, including the information contained in the declaration by an H.R. professional, or highlight "small differences in day-to-day-tasks." (*Id.* at 7–10.)

The parties dispute what the Court may consider in analyzing the Notice Motion and for what purpose. Avis argues the Court cannot consider any declarations by Plaintiffs or Opt-in Plaintiffs that would be outside the statute of limitations, looking back from when new opt-in plaintiffs could conceivably submit a notice. (ECF No. 35 at 22–25.) However, this argument misunderstands the interplay of the FLSA's statute of limitations and the meaning of "similarly situated" in the conditional certification of an FLSA claim. Plaintiffs defined the Relevant Period for their claims as "any time between June 7, 2021[,] and the present." (ECF No. 22-1 at 14.) As described in the Court's analysis of the Motion to Dismiss, Plaintiffs worked at Avis for at least some time within the Relevant Period. *See supra* Section III.A.2.a. That timeframe is therefore the

basis of the similarly situated analysis, not when new opt-in plaintiffs might be able to join and start their own limitations clocks. The fact that some FLSA Collective members may find out too late to join is a consequence of the FLSA's statutory scheme that courts in this District have noted,[9] and one which Plaintiffs are attempting to remedy with their Motion for Equitable Tolling. (ECF No. 42.) But it is not an impediment to conditional certification in the way Avis contends and does not present a reason to ignore the Plaintiffs' and Opt-in Plaintiffs declarations, all of which fall within the Relevant Period. (ECF Nos. 22-3–22-11.)

The one case Avis cites for its view, *In re Wawa*, is inapposite. There, the named plaintiff attempted to conditionally certify FLSA claims regarding alleged off-the-clock, uncompensated overtime work by non-exempt employees using the record from a prior case about the misclassification of that class of employees as exempt, in which there were no allegations of off-the-clock work. *See In re Wawa*, 2021 WL 2073758 at *4–5. The court denied the conditional

---

[9] As another court in this District recently explained:

> A named plaintiff's [FLSA] claim is deemed commenced on the date that the collective action complaint is filed. An opt-in plaintiff's claim, by contrast, is commenced only later, when written consent is filed. Id. § 256(a)–(b). That delay potentially creates a trap for opt-in plaintiffs: an opt-in's FLSA claim may become untimely prior to their having received court-authorized notice, because the filing of the collective action complaint has no automatic tolling effect as to their claims. Opt-in plaintiffs' FLSA claims are therefore particularly vulnerable to the running of the statute of limitations where, as here, motions for conditional certification and notice remain undecided for a significant period.

*Fogg v. Clean Harbors Env't Servs., Inc.*, Civ. A. No. 21-7626, 2023 WL 1794836, at *7 (D.N.J. Feb. 7, 2023).

certification based on the "temporally, factually, and legally distinct circumstances," not simply because of the different timeframes involved. *Id.* at 4.

The parties also contest whether the similarities between the declarations by Plaintiffs and Opt-in Plaintiffs make them less useful to the Court in its step one analysis. Upon reviewing the cases cited by Plaintiffs and Avis, the Plaintiffs have the better argument, as the cases upon which they rely come from this Circuit and deal directly with "cookie cutter" declarations in conditional certification motions. *See Clark v. Intelenet Am., LLC*, Civ. A. No. 18-14052, 2020 WL 831127, at *3 n.2 (D.N.J. Feb. 19, 2020); *Archer v. Defenders, Inc.*, Civ. A. No. 18-470, 2018 WL 5962470, at *2 n. 2 (D. Del. Nov. 14, 2018); *Tompkins v. Farmers Ins. Exch.*, Civ. A. No. 5:14-3737, 2015 WL 4931605, at *4 (E.D. Pa. Aug. 18, 2015). In contrast, Avis's support comes from courts considering declarations in a Rule 23 class certification, which imposes different requirements, *see Ward v. Sutter Valley Hosps.*, Civ. A. No. 2:19-00581, 2022 WL 2805965, at *8–9 (E.D. Cal. July 18, 2022) (denying class certification under Rule 23 requirements and then performing separate FLSA collective evaluation); *Flores v. Anjost Corp.*, 284 F.R.D. 112, 117 (S.D.N.Y. 2012) (evaluating state wage-and-hour law under Rule 23); *Gomez v. J. Jacobo Farm Lab. Contractor, Inc.*, 334 F.R.D. 234, 243 n.2 (E.D. Cal. 2019) (same), or in a different procedural posture, *see Augustyniak v. Lowe's Home Ctr., LLC*, Civ. A. No. 14-00488, 2016 WL 462346, at *4 (W.D.N.Y. Feb. 8, 2016) (deciding, after denying conditional certification in a separate opinion, if discovery is necessary into situations of 50 opt-in plaintiffs who nonetheless filed opt-in forms).

Upon review of all "the pleadings and affidavits in support of or in opposition to the proposed collective action," *Pearsall-Dineen,* 27 F. Supp. 3d at 569, Plaintiffs have shown a "factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees," *Adami*, 299 F.R.D. at 78, "beyond pure

speculation," *Russo v. Gov't Emps. Ins. Co.*, Civ. A. No. 2:21-17234, 2022 WL 3098107, at *4 (D.N.J. Aug. 3, 2022). To start, Plaintiffs allege, and their declarations and those of the Opt-in Plaintiffs attest, that OMs were classified as exempt from overtime (ECF Nos. 1 ¶ 35, 22-3–22-11), a fact Avis does not dispute (ECF No. 35 at 23). In their declarations, Plaintiffs and Opt-in Plaintiffs describe predominantly performing non-exempt duties, including the same activities performed by overtime-eligible employees, and that they observed other OMs performing the same duties, some of which they identify by name. (*See, e.g.*, ECF Nos. 22-3 ¶ 3, 22-4 ¶ 3, 22-5 ¶ 5.) Those tasks included "renting cars, checking in customers who returned their cars, providing customers with receipts, checking the gas level in the returned cars, cleaning cars, moving cars, and removing items left in the cars" (ECF No. 22-4 ¶ 3), as well as "cleaning and washing cars, speaking with customers about their car rentals and helping them at the rental counter" (ECF No. 22-3 ¶ 3) and "cleaning and vacuuming cars [and] moving cars as needed around the lot" (ECF No. 22-9 ¶ 3). Plaintiffs and Opt-in Plaintiffs also describe repeatedly working more than 50 hours per week and being told the role required "mandatory overtime hours" (ECF No. 22-4 ¶ 7), and some describe working a regular shift schedule of 50 hours per week or more (*id.*; 22-8 ¶ 7). For example, Opt-in Plaintiff Taylor attests the "minimum schedule" at her Avis location for an OM was "at least 50 hours and was normally 5 days a week for 10-hour shifts," and she states she typically worked "Thursday to Monday," a five-day stretch. (ECF No. 22-8 ¶ 7.) Plaintiff Rodriguez also describes working Thursday through Monday and "about 50 hours per week . . . and up to about 62 hours in a week." (ECF No. 22-4 ¶ 7.) While Plaintiff Kaynaroglu does not describe his shift schedule, he does state he "typically worked about 50 hours per week and sometimes more." (ECF No. 22-3 ¶ 7.) And Opt-in Plaintiff Jim Pauliks describes a typical

schedule of "5 days a week for 10-hour shifts . . . Wednesday through Saturday" and "typically work[ing] 55 hours per week." (ECF No. 22-9 ¶ 7.)

Courts in this District have accepted similar allegations as sufficient for conditional certification. *See Payton-Fernandez v. Burlington Stores, Inc.*, Civ. A. No. 22-608, 2023 WL 7131913, at *5 (D.N.J. Oct. 30, 2023) (granting conditional certification based on declarations from named plaintiffs and other employees describing performance of non-exempt tasks for more than 40 hours per workweek despite exempt classification); *Shiptoski v. SMG Grp., LLC*, Civ. A. No. 3:16-1216, 2018 WL 11484967, at *3 (M.D. Pa. Jan. 31, 2018) (same), *report and recommendation adopted*, Civ. A. No. 3:16-01216, 2018 WL 11484966 (M.D. Pa. Mar. 5, 2018); *Gervasio v. Wawa Inc.*, Civ. A. No. 17-245, 2018 WL 385189, at *4 (D.N.J. Jan. 11, 2018) ("Plaintiffs have demonstrated [employees] from three different states have performed these non-exempt tasks, while working more than forty hours per week, and not receiving overtime compensation. As such, . . . these facts suffice for the Court to . . . conditionally certif[y] a collective action."); *Essex v. Children's Place, Inc.*, Civ. A. No. 15-5621, 2016 WL 4435675, at *5 (D.N.J. Aug. 16, 2016) ("Plaintiffs . . . testified that they consistently worked more than forty hours per week and did not receive overtime compensation. Defendant agrees that no overtime was paid . . . . Plaintiffs also testified that they performed similar, non-managerial tasks for a majority of the hours worked."). At step one of the Third Circuit's FLSA certification process, Plaintiffs' showing is therefore sufficient.

Avis makes several arguments about the true character of the OMs' duties, including that the declarations presented fail to describe their observations of other OMs with adequate detail, that OM duties are more managerial in nature, and that OMs perform "exempt" duties frequently and in conjunction with non-exempt duties (ECF No. 35 at 26–31), but none impede providing

notice to the FLSA Collective at this stage. First, other courts in this Circuit have granted conditional certification based on similarly brief descriptions by the declarants of their observations of other employees. *See, e.g.*, *Payton-Fernandez*, 2023 WL 7131913 at *2–3 (granting conditional certification where declarants described discussing job with others in the same role and found other employees "regularly worked more than 40 hours a week, were classified as exempt, were not paid overtime compensation, [and] spent most of their time performing non-exempt work"); *Yang v. Taiji Oriental Spa NJ Corp.*, Civ. A. No. 22-617, 2023 WL 8469611, at *2 (D.N.J. Dec. 6, 2023) (granting conditional certification where plaintiff submitted "an affidavit detailing his knowledge of thirty-three non-managerial employees, all massage therapists, who told Plaintiff that Defendants paid them an hourly rate without overtime compensation"); *Tompkins*, 2015 WL 4931605, at *3 (granting conditional certification where declarants stated they believed all employees were unlawfully not paid overtime based on "communicating with [their] co-workers and managers"). Second, the nature of OMs' duties and the proportion of time spent on exempt versus non-exempt tasks are both merits questions, "which the Court is not called on to address at this juncture." *Tompkins*, 2015 WL 4931605, at *5. Accordingly, the Court will conditionally certify a collective action including all persons who worked at Avis car rental locations as OMs any time between June 7, 2021, and the present.

### C.  Notice

To effectuate notice to the FLSA Collective, Plaintiffs propose a notice and distribution plan with a 90-day response period, which they contend will provide potential opt-in plaintiffs with the information necessary regarding their rights to make an informed decision. (ECF No. 22-1 at 14–18.) Plaintiffs ask the Court to authorize notice sent via U.S. mail, email, and text message, arguing courts routinely approve use of the latter two methods in today's modern communication

environment, and they are likely the preferred communication modes for potential opt-in plaintiffs. (*Id.* at 15–16.) Plaintiffs also request permission to send a reminder notice through the same means halfway through the notice period. (*Id.* at 16– 17.) Additionally, Plaintiffs request a standalone website on which to post notice of the collective action and collect consents to join. (*Id.* at 17.) Finally, to facilitate identifying potential members of the FLSA Collective, Plaintiffs ask the Court to order Avis to produce a "data manipulable" list of OMs with their names, contact information (including mailing address, email, and phone number), and employment information, pointing to cases in this Circuit where courts have ordered production of similar lists. (*Id.* at 18 (citing *Doe v. Banc, Jack & Joe LLC*, Civ. A. No. 17-3843, 2020 U.S. Dist. LEXIS 95129, at *43 (D.N.J. June 1, 2020); *Stillman,* 2008 U.S. Dist. LEXIS 32853, at *35; *Sanchez v. Santander Bank, N.A.*, Civ. A. No. 17-5775, 2019 U.S. Dist. LEXIS 198094, at *5 (D.N.J. Nov. 15, 2019)).) Plaintiffs also request the Court order Avis to provide "the last four digits of Social Security numbers [("SSNs")] for those members whose notices are returned undeliverable." (*Id.*)

Avis does not object to producing Plaintiffs' requested contact list of potential FLSA Collective Members, subject to a protective order and administration by a "mutually-acceptable third-party notice administrator," or to including the physical and email addresses of those individuals. (ECF No. 35 at 36.) However, Avis has several objections to the form, scope, and time period for notice. (*Id.* at 31–38.) Avis contends, based on the declaration of an H.R. professional in its employ, Aiko Bunn Persaud, (the "Persaud Declaration") that, starting in June 2023, some subset of Avis's OMs voluntarily executed a Mutual Arbitration Agreement ("MAA"), where the parties agreed to resolve employment-related claims, including wage-related claims, through binding arbitration. (*Id.* at 32–33.) Avis argues the "MAA" included a waiver of participation rights to any class or collective proceedings, and therefore, signatories to an MAA should not

receive notice. (*Id.* at 33 (citing *Fischer v. Kmart Corp.*, No. 13-cv-4116, 2014 WL 3817368, at *7 (D.N.J. Aug. 4, 2014)).) Avis also asserts notice via text message and a standalone website are unnecessary and duplicative, and Plaintiffs have failed to explain why physical mail and email alone would be insufficient. (*Id.* 34–35.) As a result, Avis argues it should not produce the last known telephone numbers of current and former OMs as they would serve no purpose.[10] (*Id.* at 36.) And Avis contends a 60-day notice period is standard practice for putative class and collective actions, and Plaintiffs fail to explain why it is necessary to depart from the norm. (*Id.* at 35.)

In response, Plaintiffs assert it is inappropriate exclude those OMs who signed an MAA at this time because Avis has not presented specific evidence Plaintiffs or Opt-in Plaintiffs were subject to an MAA, and New Jersey law requires determining whether "an employee has agreed clearly and unambiguously to arbitrate the disputed claim," an individual analysis it contends the Court cannot perform preemptively. (ECF No. 38 at 10–11 (quoting *Leodori v. CIGNA Corp.*, 814 A.2d 1098, 1100 (N.J. 2003)).) Plaintiffs also point to Supreme Court and Third Circuit precedent indicating a court must consider the validity of an arbitration agreement before determining if the dispute at issue falls within its scope. (*Id.* at 11 (citing *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019)).) Regarding the means of notice, Plaintiffs argue courts have recognized text messages "as considerably more effective than notice

---

[10] Avis also objects to producing partial Social Security numbers in the event of undeliverable notices. (ECF No. 35 at 36.)

by mail or email alone," and Avis's cases are distinguishable. (*Id.* at 14.) Plaintiffs also reiterate their desire for a standalone website and a 90-day notice period. (*Id.* at 14–15.)

"Following the grant of conditional certification under the FLSA, courts possess broad discretion to provide court-facilitated notice." *Ritzer v. UBS Fin. Servs.*, Civ. A. No. 08-01235, 2008 U.S. Dist. LEXIS 71635, at *9 (D.N.J. Sept. 22, 2008) (citing *Hoffman La-Roche*, 493 U.S. at 170). In determining the scope of the notice, courts must "strike the appropriate balance in ensuring notification to the [potential class] while minimizing disturbance to [defendant's] business." *Steinberg* 2012 U.S. Dist. LEXIS 89086, at *16 (citing *Hallissey v. Am. Online, Inc.*, Civ. A. No. 99-3785, 2008 U.S. Dist. LEXIS 18387, at *9 (S.D.N.Y. Feb. 19, 2008)); *Bellan v. Capital BlueCross*, 496 F. Supp. 3d 854, 860 (M.D. Pa. 2020) (denying the plaintiff's request for notice via text message to limit the "potential for overly-duplicative and unnecessary forms of notice"). Courts have found "first class mail and home addresses are generally deemed sufficient, and additional information and contact methods are typically provided only if necessary." *Steinberg*, 2012 U.S. Dist. LEXIS 89086, at *18–19; *see also Bredbenner v. Liberty Travel, Inc.*, Civ. A. No. 09-00905, 2009 U.S. Dist. LEXIS 67122, at *10 n.3 (D.N.J. July 31, 2009) ("Courts generally release social security numbers only after notification via first class mail proves insufficient."). However, courts in this Circuit have more recently embraced notice via email and text message "because of the heightened reliability of electronic notifications to reach the intended individual." *Gilbertson v. J. Givoo Consultants I, Inc.*, Civ. A. No. 20-6991, 2021 WL 689114, at *1 (D.N.J. Feb. 23, 2021) (permitting notice via email and text and collecting cases from Circuit permitting same); *Yang*, 2023 WL 8469611 at *4 (permitting notice via email and text).

As Avis noted (ECF No. 35 at 31–32) and Plaintiffs acknowledged (ECF No. 38 at 13), Plaintiffs failed to include their proposed notice and consent to join forms in the exhibits

accompanying the Notice Motion. While Plaintiffs attached the proposed language to their reply (ECF Nos. 38-2, 38-3), Avis has not had the opportunity to respond to it before the Court or propose alternatives. As both parties suggest, the Court will therefore order them to meet and confer within 30 days of this opinion and accompanying order to determine if they can agree on the content of these documents and propose mutually agreeable language to the Court or otherwise explain any remaining disputes.[11] Similarly, as the parties are in agreement, the Court orders Avis to produce a data-manipulable list of OMs with names, last known mailing addresses, last known phone numbers,[12] last known personal email addresses, work locations, and dates of employment as OMs at each location, but directs the parties in their meet and confer to discuss the whether they can agree to Avis's proposal of hiring a third-party administrator for the notice process. Because Avis does not appear to object, Plaintiffs' request to send a reminder notice halfway through the notice period is granted. *See Yang*, 2023 WL 8469611 at *4 (authorizing reminder halfway through 60-day period); *Covachuela v. Jersey Firestop, LLC*, 2021 WL 1326985, at *3 (D.N.J. Apr. 9, 2021) (same). The request to guarantee the provision of SSNs at this stage, in line with the practice of courts in this District, is denied. *See, e.g.*, *Steinberg*, 2012 U.S. Dist. LEXIS 89086, at *18–19; *Bredbenner*, 2009 U.S. Dist. LEXIS 67122 at *10 n.3.

However, the Court finds a standalone website would be duplicative of the other, more targeted forms of notice Plaintiffs have requested, and Plaintiffs fail to explain why it is necessary. The Court also agrees with Avis that only a 60-day notice period is necessary "because '[a]n opt-

---

[11] Plaintiffs request the Court equitably toll the statute of limitations during any meet and confer ordered by the Court. (ECF No. 38 at 13.) As Plaintiffs' failure to attach the proposed language to their own motion is the root of this issue, and Plaintiffs have also requested equitable tolling generally via a separate pending motion (ECF No. 42), this request is denied.

[12] While Avis objects to notice via text message, Plaintiffs are correct to note this is routinely permitted in this District. *See Gilbertson*, 2021 WL 689114 at *1; *Yang*, 2023 WL 8469611 at *4.

in period of 60 days is sufficient time to provide [potential plaintiffs] with notice, while not needlessly delaying litigation.'" *Yang*, 2023 WL 8469611 at *4 (quoting *Greene v. Cnty. of Essex*, Civ. A. No. 2:23- 00572, 2023 WL 4526029, at *4 (D.N.J. July 13, 2023)); *see also Covachuela*, 2021 WL 1326985 at *4.

Regarding the issue of whether to exclude OMs who signed an MAA with Avis, the parties' discussion of this issue was brief, and the Court is ordering the parties to meet and confer on other matters. Therefore, the Court will reserve on this question and instructs the parties to meet and confer on the applicability of this agreement to potential members of the FLSA Collective, also within 30 days of this opinion and order. At the time the parties propose language for a notice and consent to join form, they shall inform the Court if judicial resolution of this question is still necessary and propose a briefing schedule.

According, Plaintiffs' Notice Motion is **GRANTED IN PART AND DENIED IN PART**. For those issues on which the Court has reserved judgment, the parties shall meet and confer within 30 days of this opinion and accompanying order and update the Court on the status of these discussions within the same 30 days and submit a proposed order.

## V. CONCLUSION

For the reasons set forth above, and for good cause appearing, Avis's Motion to Dismiss (ECF No. 20) is **DENIED**, Avis's Motion to Strike (ECF No. 36) is **DENIED AS MOOT**, and Plaintiffs' Notice Motion (ECF No. 22) is **GRANTED IN PART AND DENIED IN PART**. An appropriate order follows.


Date: March 27, 2025                    */s/ Brian R. Martinotti*
                                        **HON. BRIAN R. MARTINOTTI**
                                        **UNITED STATES DISTRICT JUDGE**